476 So.2d 218 (1985)
R.R., a Juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 84-62.
District Court of Appeal of Florida, Third District.
July 30, 1985.
Bennett H. Brummer, Public Defender and James H. Greason, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Michael J. Neimand, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HUBBART and DANIEL S. PEARSON, JJ.
SCHWARTZ, Chief Judge.
This is an appeal from an adjudication of delinquency. The petition charged R.R. with four counts of unlawfully receiving lost credit cards and one count of grand theft from Burdines Department Store. The straightforward and  since R.R. did not testify  completely uncontradicted evidence at the adjudicatory hearing was that a lady named Fidelia Filgueiras had misplaced four credit cards at the Crandon Park Beach earlier on the same afternoon that R.R., with all four in his possession, attempted to use one of them to buy five polo shirts totalling $149.10 from the Burdines store at Dadeland. As soon as he had duly signed the credit slip as "Edward Filgueiras," however, he was accosted by a security guard and admitted that he had found and taken the cards without the permission of the owner.
The sole challenge R.R. raises to the resulting and inevitable finding of guilt arises from what might have been thought was a wholly immaterial misstep in the awesome march of justice in this case. It arose when the prosecutor attempted to introduce the actual polo shirts cum price tags into evidence. Defense counsel objected on the entirely accurate ground that the state had not listed the shirts[1] in its pre-trial disclosure of the physical evidence to be used at the hearing, Fla.R.Juv.P. 8.770(a)(2)(iv); see Fla.R.Crim.P. 3.220(a)(1)(xi), and specifically requested a Richardson[2] hearing concerning the discovery violation. Without conducting the hearing, the trial court nevertheless admitted the items into evidence. R.R. now claims the right to reversal solely because *219 a Richardson inquiry was not held. With the greatest reluctance, we are compelled to agree.
There is no doubt that the lower court erred in not holding a Richardson hearing after being requested to do so. Nevertheless, if this were an ordinary case, we would unhesitatingly affirm the judgment below on the virtually self-evident ground that the failure to do so was simply harmless error. Section 924.33, Florida Statutes (1983).[3] In this case, indeed, harmlessness clearly appears[4] on two separate bases:
1. By the very nature of the items  which were irrefutably and immutably just what they appeared to be  there is no doubt that the respondent's ability to prepare was not in any way affected by the fact that their proposed admission into evidence was not revealed until the trial itself; the discovery violation, which consisted of not previously informing the defense, was therefore entirely non-prejudicial; and the failure to hold a formal Richardson hearing, which, if conducted, would have simply revealed what was otherwise obvious could not, in turn, have affected the ruling admitting the shirts into evidence. In other words, since the violation itself obviously made no difference, the failure to conduct a hearing, which would have also showed that it made no difference, made no difference. See Irvin v. State, 66 So.2d 288 (Fla. 1953) ("[P]rocedure should not be a fetish and we should not commit ourselves to procedure for procedure's sake. If there has been any deviation from the proper path, the question immediately arises whether the digression was of such consequences as to have endangered fundamental rights. That is the reason for our `harmless error' statute." 66 So.2d at 296.); 3 Fla.Jur.2d Appellate Review § 361 (1978).
2. Actually receiving the items into evidence, even if erroneous, obviously could not have affected the determination of the juvenile's guilt of the offenses charged,[5] all of the elements of which were otherwise overwhelmingly and uncontradictedly established without them. State v. Murray, 443 So.2d 955 (Fla. 1984); cases collected at 3 Fla.Jur.2d Appellate Review § 363 (1978).[6]
Notwithstanding all this, we may not affirm the plainly correct judgment below. This is because the Supreme Court, whose opinions we are bound to follow, Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), has clearly and repeatedly held that Richardson violations constitute per se error so that reversals must inevitably follow from their occurrence, regardless of their utter lack of effect upon the judgment under review. Cumbie v. State, 345 So.2d 1061 (Fla. 1977); Cooper v. State, 377 So.2d 1153 (Fla. 1979); Wilcox v. State, 367 So.2d 1020 (Fla. 1979); Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982). As we have in the past, e.g., Balboa v. State, 446 So.2d 1134 (Fla. 3d DCA 1984), we apply this rule and reverse the order of *220 delinquency for a new adjudicatory hearing.
Because we are most disquieted by the rule of automatic Richardson reversibility[7]  which, for reasons which we frankly do not understand, places a mere procedural deficiency[8] into a protected status not occupied by errors which concern the most serious of constitutional rights,[9]  we join the fourth district, Hall v. State, 477 So.2d 572 (Fla. 4th DCA 1985)[10], in submitting the issue for reconsideration by the Supreme Court.[11] Accordingly, pursuant to Article V, Section 3(b)(4), of the Florida Constitution, we certify that this decision passes upon the following question of great public importance:
Is a new trial required when the trial court's failure to conduct a Richardson inquiry is, in the opinion of the reviewing court, harmless error?[12]
As did the fourth district, we take the liberty of urging the Supreme Court to "change the per se rule which it created," Hall, 477 So.2d 575, by answering this question in the negative.
Reversed, question certified.
NOTES
[1] Only the credit cards were designated.
[2] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[3] The exceptions to this rule are few and far between. E.g., Harris v. State, 438 So.2d 787 (Fla. 1983)(reference to invocation of fifth amendment per se error when preserved); Grissom v. State, 469 So.2d 151 (Fla. 3d DCA 1985)(same; question certified).
[4] Although we find the error harmless by any standard, including that of "beyond a reasonable doubt," we studiedly do not include that determination in the body of our opinion because, apparently unlike the fourth district in Hall, infra, we do not believe it is applicable to the present issue. The reasonable doubt test applies to errors which affect constitutional rights, Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); in contrast, Richardson questions involve deviations from a court-imposed procedural step in the administration of the discovery process which is itself created only by rule and is not mandated by the constitution. See State v. Lampp, 155 So.2d 10 (Fla. 2d DCA 1963).
[5] This would be true even if a jury trial were involved; it is all the more clearly the case because the lower court was the trier of fact. See Prince v. Aucilla River Naval Stores Co., 103 Fla. 605, 137 So. 886 (1931).
[6] We point out that Hall seems to involve only the second of the two separate types of harmlessness we have identified in this case.
[7] It is noteworthy that, in this same area of pre-trial discovery, the Supreme Court has recently held that the far more serious dereliction of the government's failure to disclose Brady impeachment material after demand does not require automatic reversal. United States v. Bagley, ___ U.S. ___, 105 S.Ct. 3375, 85 L.Ed.2d 481 (1985).
[8] See note 4, supra.
[9] State v. Murray, supra. To illustrate the point, the Florida Law Weekly issue of July 19, 1985 contains two decisions of the Supreme Court, both of them capital cases. Valle v. State, 474 So.2d 796 (Fla. 1985); Stano v. State, 473 So.2d 1282 (Fla. 1985). In both, errors of various, but seemingly more significant, kinds were held harmless and judgments imposing the death sentence were therefore affirmed.
[10] The virtually simultaneous certification of Hall and this case will afford the Supreme Court the perhaps felicitous opportunity of considering the effect of its per se rule upon cases which occupy the entire range of those in our criminal and juvenile justice system, from the most routine, as here, to the most serious, like the atrocious murder involved in Hall.
[11] In Hoffman v. Jones, supra, the Supreme Court itself pointed out that this course may be appropriate in a situation like this:

This is not to say that the District Courts of Appeal are powerless to seek change; they are free to certify questions of great public interest to this Court for consideration, and even to state their reasons for advocating change. They are, however, bound to follow the case law set forth by this Court.
280 So.2d at 434.
[12] Although, for the reasons stated in note 4, supra, we have not incorporated the "beyond a reasonable doubt" test in our certified question, which is otherwise identical to that in Hall, we reiterate, in the event the Supreme Court disagrees with our view on this point, and in order to facilitate complete disposition of the case on petition for review in that court, that we find that the Richardson error in this case was in fact harmless beyond a reasonable doubt.